UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | |
|---|---|
| ROBNEY IRVING-MILLENTREE, individually and on behalf of all others similarly situated,<br><br>v.<br><br>PEPSICO, INC. | Case No. 4:22-cv-00440<br>Fed. R. Civ. P. 23 Class Action |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

### Summary

1. Like many other companies across the United States, PepsiCo's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout PepsiCo's organization.

3. As a result, PepsiCo's workers who were not exempt from the overtime requirements under Missouri law, were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. Robney Irving-Millentree is one such PepsiCo worker.

5. PepsiCo could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6. But it didn't. Instead, PepsiCo used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. PepsiCo pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. PepsiCo's failure to pay wages, including proper overtime, for all hours worked violates Missouri's Minimum Wage and Maximum Hour Law (MWHL), Mo. Rev. Stat. § 290.500 *et seq*. and Missouri common law.

10. Irving-Millentree brings this lawsuit to recover these unpaid overtime wages and other damages owed by PepsiCo to him and the non-overtime-exempt workers like him, who were the ultimate victims of not just the Kronos hack, but also PepsiCo's decision to make its front-line workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by PepsiCo to all these workers, along with the penalties, interest, and other remedies provided by Missouri law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

14. PepsiCo maintains offices in this District.

## PARTIES

15. **Plaintiff Robney Irving-Millentree** is a natural person.

16. Irving-Millentree is a resident and citizen of Missouri.

17. Irving-Millentree has been, at all relevant times, an employee of PepsiCo.

18. Irving-Millentree has worked for PepsiCo since February 2007.

19. Irving-Millentree has, at all relevant times, worked for PepsiCo in Missouri.

20. Irving-Millentree represents a class of similarly situated workers under Missouri law pursuant to Federal Rule of Civil Procedure 23. This "Missouri Class" is defined as:

> **All current or former hourly and salaried employees of PepsiCo, including its subsidiaries and alter egos, who were not exempt from overtime pay and who worked for PepsiCo in Missouri at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

21. Throughout this Complaint, the Missouri Class Members are also referred to as the "Similarly Situated Workers."

22. **Defendant PepsiCo, Inc. ("PepsiCo")** is a North Carolina corporation.

23. PepsiCo maintains its headquarters and principal place of business in New York.

24. PepsiCo conducts business in a systematic and continuous manner throughout Missouri and this District.

25. PepsiCo may be served by service upon its registered agent, **CT Corporation System, 120 South Central Ave., St. Louis, MO 63105**, or by any other method allowed by law.

26. At all relevant times, PepsiCo exerted operational control over its subsidiaries and alter egos.

27. At all relevant times, PepsiCo substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

28. At all relevant times, PepsiCo had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

29. PepsiCo employed and/or jointly employed, with its subsidiaries and alter egos, Irving-Millentree and the Similarly Situated Workers.

30. PepsiCo and its respective subsidiaries and alter egos are joint employers for purposes of Missouri law.

## FACTS

31. PepsiCo is a food, snack, and beverage corporation.

32. Many of PepsiCo's employees are paid as non-exempt hourly and salaried workers.

33. Since at least 2021, PepsiCo has used timekeeping software and hardware operated and maintained by Kronos.

34. On or about December 11, 2021, Kronos was hacked with ransomware.

35. The Kronos hack interfered with its clients, including PepsiCo's, ability to use Kronos's software and hardware to track hours and pay employees.

36. Since the onset of the Kronos hack, PepsiCo has failed to keep accurate track of the hours that Irving-Millentree and Similarly Situated Workers have worked.

37. Instead, PepsiCo has used various methods to estimate the number of hours Irving-Millentree and Similarly Situated Workers work in each pay period.

38. For example, PepsiCo issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

39. As a result of PepsiCo,'s failure to accurately track the actual hours worked by its employees each week, employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

40. Many employees were not even paid for all their non-overtime wages for hours worked before 40 in a workweek.

41. Irving-Millentree is one of the thousands of PepsiCo employees affected by these pay and timekeeping practices.

42. Instead of paying Irving-Millentree for the hours he actually worked (including overtime hours), PepsiCo simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Irving-Millentree's actual hours, in multiple workweeks.

43. In some instances, Irving-Millentree was paid portions of overtime hours worked, but the overtime rate was not at the proper overtime premium of at least 1.5x his agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonuses.

44. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

45. PepsiCo knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

46. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

47. PepsiCo knows it has to pay the wages it agreed to pay its employees.

48. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

49. PepsiCo could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

50. Instead of accurately tracking hours and paying employees' wages and overtime, PepsiCo decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

51. Even to the extent it did pay some overtime to affected employees, PepsiCo failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Asurion did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

52. It was feasible for PepsiCo to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

53. But PepsiCo chose not to do that.

54. In other words, PepsiCo pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

55. Irving-Millentree is one of PepsiCo's employees who had to shoulder the burden of this decision by PepsiCo.

56. Irving-Millentree was and is a non-exempt hourly employee of PepsiCo.

57. Irving-Millentree regularly works over 40 hours per week for PepsiCo.

58. Irving-Millentree's normal, pre-Kronos hack hours are reflected in PepsiCo's records.

59. Since the Kronos hack, PepsiCo has not paid Irving-Millentree for his actual hours worked each week.

60. Since the hack took place, PepsiCo has not been accurately recording the hours worked by Irving-Millentree and its other workers.

61. Even though PepsiCo has had Irving-Millentree record and submit his hours, PepsiCo has not issued proper payment for all hours worked.

62. Even when PepsiCo has issued payment to Irving-Millentree for any overtime, the overtime is not calculated based on Irving-Millentree's regular rates, as required by Missouri law.

63. PepsiCo was aware of the overtime requirements of Missouri law.

64. PepsiCo nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Irving-Millentree.

65. PepsiCo's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the MWHL.

66. The full overtime wages owed to Irving-Millentree and the Similarly Situated Workers became "unpaid" when the work for PepsiCo was done—that is, on Irving-Millentree and the Similarly Situated Workers' regular paydays.

67. At the time PepsiCo failed to pay Irving-Millentree and the Similarly Situated Workers in full for their overtime hours by their regular paydays, PepsiCo became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under the law.

68. In other words, there is no distinction between late payment and nonpayment of wages under the law.

69. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law.

70. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to PepsiCo's acts and omissions resulting in the unpaid wages in the first place.

71. Irving-Millentree and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by PepsiCo under Missouri law.

## CLASS ACTION ALLEGATIONS

72. Irving-Millentree incorporates all other allegations.

73. The illegal practices PepsiCo imposed on Irving-Millentree were likewise imposed on the Missouri Class members.

74. Numerous other individuals who worked for PepsiCo were not properly compensated for all hours worked, as required by Missouri law.

75. The Missouri Class is so numerous that joinder of all members of the class is impracticable.

76. PepsiCo imposed uniform practices and policies on Irving-Millentree and the Missouri Class members regardless of any individualized factors.

77. Based on his experience and tenure with PepsiCo, as well as coverage of the Kronos hack, Irving-Millentree is aware that PepsiCo's illegal practices were imposed on the Missouri Class members.

78. Missouri Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

79. PepsiCo's failure to pay wages and overtime compensation in accordance with Missouri law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Missouri Class members.

80. PepsiCo's failure to pay wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Missouri Class members.

81. Irving-Millentree's experiences are therefore typical of the experiences of the Missouri Class members.

82. Irving-Millentree has no interest contrary to, or in conflict with, the members of the Missouri Class. Like each member of the proposed class, Irving-Millentree has an interest in obtaining the unpaid wages and other damages owed under the law.

83. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

84. Absent this action, many Missouri Class members likely will not obtain redress of their injuries and PepsiCo will reap the unjust benefits of violating Missouri law.

85. Furthermore, even if some of the Missouri Class members could afford individual litigation against PepsiCo, it would be unduly burdensome to the judicial system.

86. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

87. The questions of law and fact common to each of the Missouri Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Irving-Millentree and the Missouri Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

   b. Whether PepsiCo's failure to pay Irving-Millentree and the Missouri Class members overtime at the rates required by law violated Missouri law; and

   c. Whether PepsiCo failed to make and keep the employee, time, and pay records regarding Irving-Millentree and the Missouri Class members required under Missouri law.

88. Irving-Millentree's claims are typical of the Missouri Class members. Irving-Millentree and the Missouri Class members have all sustained damages arising out of PepsiCo's illegal and uniform employment policies.

89. Irving-Millentree knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

90. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

FIRST CAUSE OF ACTION—VIOLATIONS OF MISSOURI WAGE AND HOUR LAW

91. Irving-Millentree incorporates all other allegations.

92. The conduct alleged in this Complaint violates the MWHL. Mo. Rev. Stat. § 290.500 *et seq*.

93. At all relevant times, PepsiCo has been an "employer" within the meaning of the MWHL. Mo. Rev. Stat. § 290.500(4).

94. At all relevant times, PepsiCo employed Irving-Millentree and the Missouri Class members as "employees" within the meaning of the MWHL. Mo. Rev. Stat. § 290.500(3).

95. The MWHL requires an employer like PepsiCo to pay employees at a rate no less than the minimum wage for each hour worked. Mo. Rev. Stat. § 290.502.

96. As a result of PepsiCo's failure to pay Irving-Millentree and the Missouri Class at a rate no less than the minimum wage for all hours worked, PepsiCo violated the MWHL.

97. The MWHL requires an employer like PepsiCo to pay overtime to all non-exempt employees. N Mo. Rev. Stat. § 290.505.

98. Irving-Millentree and the other Missouri Class members are non-exempt employees who are entitled to be paid overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate. Mo. Rev. Stat. § 290.505.

99. Within the applicable limitations period, PepsiCo had a policy and practice of failing to pay proper overtime to the Missouri Class members for their hours worked in excess of 40 hours per week.

100. As a result of PepsiCo's failure to pay proper overtime to Irving-Millentree and the Missouri Class members for work performed in excess of 40 hours in a workweek, PepsiCo violated the MWHL.

101. The MWHL requires an employer like PepsiCo to make and keep accurate records of the identities and occupations of employees, their rates of pay, the amounts paid to them, and the time worked each week. Mo. Rev. Stat. § 290.520.

102. Within the applicable limitations period, PepsiCo had a policy and practice of failing to make and keep the records required by the MWHL.

103. As a result of PepsiCo's failure to pay proper overtime to keep the records required by the MWHL, PepsiCo violated the MWHL.

104. PepsiCo's acts and omissions constituting its violations of the MWHL were not undertaken in good faith or with reasonable grounds for believing the acts and omissions were not in violation of the MWHL.

105. Irving-Millentree and the Missouri Class members are entitled to recover their unpaid wages, liquidated damages in an amount twice the unpaid wages, attorneys' fees, costs, and all other legal and equitable relief provided under the MWHL. Mo. Rev. Stat. § 290.527.

### SECOND CAUSE OF ACTION–BREACH OF CONTRACT

106. Irving-Millentree incorporates all other allegations.

107. PepsiCo entered into contractual agreements with Irving-Millentree and each of the Missouri Class members.

108. PepsiCo's contractual agreements with Irving-Millentree and the Missouri Class Members were oral or written contracts.

109. Whether the contractual agreements of Irving-Millentree and the Missouri Class Members were formal contracts, collective bargaining agreements, written or oral, or otherwise does not alter PepsiCo's contractual obligations.

110. Irving-Millentree and the Missouri Class Members' status as at-will employees or otherwise is irrelevant to whether they had an enforceable contract for wages with PepsiCo.

111. Under their contractual agreements, Irving-Millentree and each of the Missouri Class Members agreed to perform work for PepsiCo, and PepsiCo agreed to fully compensate each worker for all time worked at the agreed upon rates.

112. Irving-Millentree and the Missouri Class members carried out their contractual duties by performing work by PepsiCo.

113. PepsiCo breached its agreement with Irving-Millentree and the Missouri Class members by failing to compensate Plaintiff and the Missouri Class members for all hours worked at the agreed upon rates.

114. Irving-Millentree and the Missouri Class Members had regularly scheduled paydays with PepsiCo.

115. PepsiCo failed to pay Irving-Millentree and the Missouri Class Members their contractually agreed wages on their regularly scheduled payday.

116. As a result of Defendant's breach of agreement, Plaintiff and the Missouri Class members have suffered damages.

117. Plaintiff and the Missouri class members are entitled to recover their contractually agreed wages, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief.

### SECOND CAUSE OF ACTION—UNJUST ENRICHMENT

118. Irving-Millentree incorporates all other allegations.

119. PepsiCo's acts and omissions in denying wages and overtime pay to Irving-Millentree and the Missouri Class members was done knowingly, willfully, or with reckless disregard to the rights of Irving-Millentree and the Missouri Class members.

120. As a result of its unlawful acts and omissions, PepsiCo received substantial benefit in the form of financial compensation that rightfully belonged to Irving-Millentree and the Missouri Class Members.

121. It would be unjust to allow PepsiCo to retain these benefits, which were gained through unlawful means, including but not limited to, failing to pay Irving-Millentree and the Missouri Class members the wages and overtime pay they were entitled to under Missouri law.

122. PepsiCo has been unjustly enriched by its unlawful acts and omissions.

### RELIEF SOUGHT

Irving-Millentree prays for judgment against PepsiCo as follows:

    a. For an order certifying a class action for the Missouri law claims;

    b. For an order finding PepsiCo liable for violations of state wage laws with respect to Irving-Millentree and all Missouri Class members covered by this case;

    c. For a judgment awarding all unpaid wages, liquidated damages, and penalties, to Irving-Millentree and all Missouri Class members covered by this case;

    d. For an equitable accounting and restitution of wages due to Irving-Millentree and all Missouri Class members covered by this case;

    e. For a judgment awarding attorneys' fees to Irving-Millentree and all Missouri Class members covered by this case;

    f. For a judgment awarding costs of this action to Irving-Millentree and all Missouri Class members covered by this case;

g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Irving-Millentree and all Missouri Class members covered by this case; and

h. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**
E.D. Mo. Bar # 24069719(TX)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**